UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BICH THI HO, | * | CIVIL ACTION |
| BICH THI HO o/b/o A.D., | * | NO. 23-5618 |
| *Plaintiffs* | * | |
| | * | DIVISION: 1 |
| VERSUS | * | |
| | * | MAGISTRATE JUDGE |
| JEFFERSON FINANCIAL FEDERAL CREDIT | * | JANIS VAN MEERVELD |
| UNION, | * | |
| *Defendant* | | |

ORDER AND REASONS

Before the Court are the parties' cross Motions for Summary Judgment (Rec. Doc. 98, 103). The Court finds that defendant is entitled to summary judgment dismissing plaintiffs' federal claims because no fact finder could find in plaintiffs' favor. Accordingly, defendant's Motion for Summary Judgment (Rec. Doc. 98) is GRANTED in part, plaintiffs' Motion for Summary Judgment (Rec. Doc. 103) is DENIED in part, and plaintiffs' federal claims under the Real Estate Settlement Procedures Act and the Truth in Lending Act are dismissed with prejudice. Further, the Court finds it is not appropriate to exercise supplemental jurisdiction over the parties' remaining state law claims and these claims are dismissed without prejudice.

Background

This cause of action arises out of a loan (the "Loan" or the "JFFCU Loan") from Jefferson Financial Federal Credit Union ("JFFCU") to Kiet Van Do that was secured by a mortgage on property located at 836-838 Behrman Highway, in Gretna, Louisiana (the "Property"). It is undisputed that Do executed a promissory note for $98,000, on January 12, 2018 (the "Note"). ECF No. 98-5. The Note had an interest rate of 5.75%. Id. There was no penalty for prepayment. Id. It is also undisputed that he signed a Multiple Indebtedness Mortgage (the "Mortgage" or the "JFFCU Mortgage")) on the Property in favor of JFFCU on the same date. ECF No. 98-7. At the

1

time, he was married to plaintiff Bich Thi Ho. In the Mortgage, Do asserted that he was presently living and residing with Ho, but that he was "separate in the herein property." Ho did not sign the Mortgage.

Do had previously mortgaged the Property. The mortgage records show Do executed a mortgage in favor of Marie Durel Gattuso on October 21, 2010, to secure a debt of $110,000, another mortgage in favor of Gattuso on December 15, 2014, to secure a debt of $15,000, and a third mortgage in favor of Gattuso on January 20, 2016, to secure a debt of $10,000. ECF No. 109-2. In the 2014 Act of Mortgage, both Do and Ho appeared (the "2014 Gattuso Mortgage"). Ho declared that the Property "is her husband's separate and paraphernal property and intended for his separate estate, kept by him under his separate administration and control." ECF No. 98-20. She explicitly took "cognizance of the [2014 Gattuso Mortgage], approved the same and agree[d] to be bound thereby." Id. Both Do and Ho executed the 2014 Gattuso Mortgage in the presence of two witnesses and a notary. Id.

JFFCU issued the Loan at issue in this lawsuit as a commercial loan. In Do's Loan Application, he reported the Property was worth $275,000, that it was subject to a mortgage with a balance of $45,000, and that he also owned a commercial shrimp boat valued at $150,000. ECF No. 98-18. He included a copy of the commercial lease for one half of the Property, which was subject to a monthly payment of $1,300. Id. The credit presentation stated that Do sought the loan "to refinance his rental located in Gretna, LA." ECF No. 98-23, at 3. It noted further that Do would like to refinance the debt of about $47,000, to make some improvements to the Property, and to retain some cash for further investments. Id. Additionally, Do would use some of the proceeds to pay off his 2016 tax liability, noted to be $19,000. Id. It was also noted that the loan "could not be refinanced by the mortgage department since the larger side of the duplex is commercially

leased." Id. JFFCU admits, though, that an appraisal of the Property dated January 2, 2018, showed that although one of the two units was rented to a commercial hair (or hair and nail) salon, it was only 43% commercial. See ECF No. 98-14, at 35. The other unit was residential. Id.

The Settlement Statement reflects $42,752.21 of the loan directed to "Payoff to Marie Gattuso" and $1,491.91 to "2017 taxes due to Jefferson Parish Sheriff's Offic." ECF No. 98-10. This left $49,266.47 in cash to borrower Do. Id. Both Do and the Settlement Agent, Trieu Law, LLC, signed the Settlement Statement. Id. On January 16, 2018, an amount of $29,299.50 was withdrawn from Do's share account and a money order in the same amount to the United States Treasury was purchased the same day, with "Form 1040 Kiet Do" in the memo line. ECF No. 98-12; 98-22.

Ho contends that the Gattuso loan had already been paid off at the time of the JFFCU Loan. She cites a payment schedule showing that the 2014 loan would be paid off by November 15, 2016, but the schedule predates the Gattuso loan and is dated December 12, 2014. ECF No. 103-28, at 1. Furthermore, other payment schedules in the same exhibit indicate that at the end of 2016, a balance of about $50,000 would be outstanding. Id. at 2. Ho also cites insurance policy declarations for the Property showing Gattuso as mortgage holder in 2014 but not on an August 2016 through August 2017 policy. ECF No. 103-28, at 14, 18. She further cites Line 11 of Schedule A to Do's 2015 tax return showing $20,334 in mortgage interest paid to Vezina and Gattuso LLC. ECF No. 103-5, at 9. But the 2016 tax return shows no interest paid. ECF No. 103-14, at 11.

Twelve days after the Mortgage to JFFCU, Ho petitioned for divorce from Do on January 24, 2014. She and Do had one child together, the minor A.D. According to Ho, Do was an alcoholic and abusive.

3

Do died in a hit and run accident on September 5, 2021. Despite the representations in the 2014 Gattuso Mortgage that the Property was separate, the Property was purchased on October 21, 2010, during the marriage of Do and Ho and in the community property regime.[1] Ho filed a petition for the partition of community property in August 2022. Aff. of Ho, ECF No. 103-24. The parties agree that A.D., as Do's sole heir, was sent into ownership and possession of Do's one half of the Property and Ho was sent into ownership and possession of the other half.

JFFCU's records show that payments were made on the Loan after Do's death through August 1, 2023. ECF No. 98-11. The parties dispute who made these payments—JFFCU claims Ho made some, Ho claims imposters made the payments—but the parties have presented no evidence on this point. JFFCU records show $68,399.40 outstanding on the Loan as of August 1, 2023. Id.

Ho filed a Complaint against JFFCU in this Court on September 28, 2023, on her own behalf and as a natural tutrix on behalf of A.D. She alleges that this Court has jurisdiction under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*, and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.* She asserts claims for violations of RESPA and TILA, for violation of the Louisiana Racketeering Act, La. Rev. Stat. § 15:1351, *et seq.*, for annulment of the Mortgage and Promissory Note, for fraud, and for unjust enrichment. JFFCU filed a counterclaim for $68,399.40 plus interest alleging that Do's minor child A.D., as sole heir recognized in judgment of possession, is liable for the Loan made to Do up to the value of his inheritance. It alleges that Ho is liable because the Loan proceeds paid community debts. And it alleges both Ho and A.D. are liable for unjust enrichment.

---

[1] Ho cites the Gattuso Promissory Note/Mortgage, but these documents do not reflect the date the property was purchased. Nonetheless, JFFCU admits Ho's assertion in its response to her Statement of Uncontested Material Facts. ECF No. 113, at 1.

The parties consented to proceed before the undersigned magistrate judge on June 18, 2024, pursuant to 28 U.S.C. § 636(c). ECF Nos. 51, 52. Trial is set to begin on January 21, 2025. Presently before the Court are the parties' cross motions for summary judgment. JFFCU seeks summary judgment dismissing Ho's claims against it and for judgment in its favor on its counterclaim. (Rec. Doc. 98). Ho seeks summary judgment in her favor on her claims against JFFCU, but does not specially address JFFCU's claims against her and A.D. (Rec. Doc. 103).

Law and Analysis

1. *Standard for Summary Judgment*

Summary Judgment under Federal Rule of Civil Procedure 56 must be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56. The movant has the initial burden of "showing the absence of a genuine issue as to any material fact." Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). The respondent must then "produce evidence or designate specific facts showing the existence of a genuine issue for trial." Engstrom v. First Nat. Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995). Evidence that is "merely colorable" or "is not significantly probative" is not sufficient to defeat summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

"An issue is material if its resolution could affect the outcome of the action." Daniels v. City of Arlington, Tex., 246 F.3d 500, 502 (5th Cir. 2001). Thus, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. Although this Court must "resolve factual controversies in favor of the nonmoving party," it must only do so "where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013) (quoting Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540

(5th Cir. 2005). The Court must not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

"Summary judgment is appropriate where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, or where it is so overwhelming that it mandates judgment in favor of the movant." Armstrong v. City of Dallas, 997 F.2d 62, 67 (5th Cir. 1993). Summary judgment is also appropriate if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

Additionally, the Fifth Circuit Court of Appeals has recognized that in non-jury cases "it makes little sense to forbid the judge from drawing inferences from the evidence submitted on summary judgment when that same judge will act as the trier of fact, unless those inferences involve issues of witness credibility or disputed material facts." Lyles v. Medtronic Sofamor Danek, USA, Inc., 871 F.3d 305, 311 (5th Cir. 2017) (quoting Matter of Placid Oil Co., 932 F.2d 394, 398 (5th Cir. 1991). "Therefore, 'at the summary judgment stage a judge in a bench trial has the limited discretion to decide that the same evidence, presented to him or her as trier of fact in a plenary trial, could not possibly lead to a different result.'" Id. (quoting Placid Oil, 932 F.2d at 398).

2. RESPA and TILA

   a. *Do RESPA and TILA apply?*

JFFCU argues that RESPA and TILA are inapplicable because the loan is a commercial loan. Indeed, neither statute applies to credit transactions "primarily for business, commercial, or agricultural purposes." 12 U.S.C. § 2606(a)(1) ("This chapter does not apply to credit transactions

involving extensions of credit . . . primarily for business, commercial or agricultural purposes . . . ."); 15 U.S.C. § 1603(1) ("This subchapter does not apply to . . . [c]redit transactions involving extensions of credit primarily for business, commercial, or agricultural purposes . . . ."). "In determining whether a particular transaction is exempt . . . the purpose of the transaction or extension of credit is controlling, not the property on which the security interest is retained." Sapenter v. Dreyco, Inc., 326 F. Supp. 871, 874 (E.D. La. 1971) (rejecting argument that TILA applied because a mortgage securing the loan was placed on a residential property where plaintiffs intended to rent the apartments and derive revenue therefrom and were in the "business" of owning and renting real estate for profit); see Poe v. First Nat. Bank of DeKalb Cnty., 597 F.2d 895, 895 (5th Cir. 1979) (finding loan was exempt from TILA even though the individual plaintiffs joined and gave personal security where "the purpose of each transaction was to finance a corporation and its business"). "As a general matter, the burden is on plaintiff to show that the loan in question was obtained for personal, as opposed to business, purposes." Mauro v. Countrywide Home Loans, Inc., 727 F. Supp. 2d 145, 154 (E.D.N.Y. 2010)

Plaintiffs cite a regulation excluding "loans secured by a 1- to 4-family residential property (whether or not it is the borrower's primary residence)" from the definition of "commercial loan." See 12 C.F.R. § 723.2(3). However, this regulation appears to be unrelated to either TILA or RESPA. The Court has found not one case (other than an earlier decision in this case) concerning the exemptions in 12 U.S.C. § 2606 or 15 U.S.C. § 1603 that cites to regulation § 723.2. Indeed, although both parties use the short-hand terminology "commercial loan" to describe the exemptions that JFFCU seeks to invoke, the term "commercial loan" is not used in either statute. Instead, as quoted above, both exemptions refer to the commercial or business "purpose" of the

7

transaction. The Court finds 12 C.F.R. § 723.2(3) does not dictate whether the RESPA and TILA exemptions apply.

Here, the Court finds that there are disputed issues of material fact that prevent a summary determination of whether the loan was primarily for business or commercial purposes.

JFFCU argues that the Loan was primarily for a commercial purpose because Do used the loan to pay taxes owed as a result of his shrimping business. JFFCU also submits that Do made the loan to refinance the property. JFFCU points out that the property securing the loan was a double, with one unit rented to a commercial business. It admits, though, that the appraisal showed that only 43% of the Property was commercial. Ho argues only that the loan was not a commercial loan because it was secured by a 1- to 4- family dwelling.

The evidence on the purpose of the loan is disputed. The settlement statement shows that $1,391.91 of the loan went to pay 2017 Jefferson Parish taxes, but there is no evidence in the record from which to conclude whether the taxes were personal or business related. ECF No. 98-10. The records appear to show that Do used $29,299.50 of the Loan proceeds to pay the IRS. But it is not clear that this payment was for business taxes. Do's 2016 tax return shows self-employment tax of $13,471 and income tax of $13,593. Of course, it is unknown whether the $29,299.50 went to pay 2016 taxes.

In the loan application, Do represented that there was a $45,000 mortgage on the Property and the settlement statement shows a payoff of $42,752.21 to Marie Gattuso. Id.; ECF No. 98-18, at 4. The Credit Presentation described the purpose of the loan as "[t]o refinance mortgage loan from hard money lender to improve cash flows." ECF No. 98-23, at 1. The synopsis explained further that Do "would like to refinance this debt and cash out in order to make some improvements to the property and to retain some cash for further investments." Id. at 3. It was reported that Do

had a commercial tenant on one side of the property and lived on the other side. Id. It was noted that the "loan could not be refinanced by the mortgage department since the other larger side of the duplex is commercially leased." Id.

Ho challenges the existence of a previous mortgage on the Property, citing an insurance policy declaration that does not list Gattuso as mortgage holder in 2016, a tax return showing no interest paid in 2016, and a payment schedule created in 2014 that appears to show the Gattuso loan would be paid off by the end of 2016 (though a 2010 schedule in the same exhibit shows a balance of about $52,000 remaining at the end of 2016). The Court is not convinced these documents create a fact issue on whether the loan proceeds were used to pay off a Gattuso mortgage. Even if they did, Ho has not presented any evidence to show the funds shown on the Settlement Statement as paid to Gattuso were instead used for a personal purpose. Yet it is unclear that funds used to pay the loan or improve the Property are primarily for a business purpose either. Although JFFCU appears to have believed at the time of the application and credit presentation that the Property was primarily a commercial rental, JFFCU concedes that the appraisal shows that the property at issue was 43% subject to a commercial lease, with 57% of the property being Do's personal residence. The Court finds it is not possible to determine on summary judgment whether the primary purpose of the loan was a commercial or business purpose such that the Loan was exempt from the requirements of RESPA and TILA. Accordingly, the Court turns to whether either party is entitled to summary judgment on plaintiffs' RESPA and TILA claims.

    b. *Plaintiffs' RESPA claims*

Ho asserts three violations of RESPA. First, she argues that JFFCU failed to identify and confirm the proper successor in interest. She cites 12 C.F.R. § 1026.2(a)(27)(i), which provides the definition of a successor in interest. She also cites a regulation requiring a servicer to maintain

polices and procedures designed to, among other things, "promptly facilitate communication with any potential or confirmed successors in interest regarding the property" upon receiving notice of the death of a borrower. 12 C.F.R. § 1204.38(b)(1)(vi). This section also requires policies to "promptly determine the documents the servicer reasonably requires to confirm that person's identity and ownership interest in the property and promptly provide to the potential successor in interest a description of those documents and how the person may submit a written request" as well as to "promptly make a confirmation determination and promptly notify the person, as applicable, that the servicer has confirmed the person's status, has determined that additional documents are required (and what those documents are), or has determined that the person is not a successor in interest." Id. She cites no case law or other basis connecting these provisions to a private cause of action.

Assuming such an action exists, as JFFCU points out, Ho raised no such claim in her Complaint or Amended Complaint. Although she alleges that JFFCU failed to consider her a successor in interest, this does not put JFFCU on notice that she was challenging JFFCU's policies for determination of successors in interest. Even if her allegations in paragraphs 103-105 that JFFCU failed to consider the plaintiffs as successors in interest could be considered as implicating a cause of action under the cited regulations, she has put forth no evidence to support her claim that JFFCU failed to have policies in place to promptly determine the successor interest. To the extent a cause of action exists for failing to identify the proper successor in interest, she cites no evidence that JFFCU failed to do so.[2] JFFCU is entitled to summary judgment dismissing any RESPA claim concerning her identification as a successor in interest.

---

[2] The allegations of the Complaint indicate that Do's brother and "imposter" sister first opened Do's succession and it was not until September 2022 that A.D. was recognized as Do's sole heir. Even if these assertions were supported by evidence, they would tend to show that the proper successor was in dispute. Moreover, the evidence shows that Ho had executed (before a notary and two witnesses) a mortgage on the Property in 2014 in which she acknowledged that

10

Next, Ho argues that JFFCU violated RESPA by failing to offer her loss mitigation options. She argues that she was entitled to be provided with information about loss mitigation options and foreclosure as a successor in interest. Once again and as JFFCU again points out, Ho raised no such claim in her Complaint or Amended Complaint. Ho claims that she did so by alleging that she was offered "only two alternatives: paying off the loan in full or foreclosure." But it was only for the first time in her motion for summary judgment that she asserted that she was entitled to be provided with other (still unspecified) loss mitigation options as a successor in interest.[3] JFFCU has not been provided with a fair opportunity to defend any such claim.[4] Ho will not be allowed to belatedly assert a claim that JFFCU has never had prior notice of. JFFCU is entitled to summary judgment dismissing any RESPA claim concerning a failure to offer loss mitigation options.

Finally, Ho appears to argue that JFFCU violated RESPA by failing to promptly provide her with the mortgage loan, bank records, and monthly periodic statements. This argument is

---

she had no interest in the Property. JFFCU was entitled to rely on this public record. In any event, considering that JFFCU has been seeking to enforce the loan against Ho and A.D., presumably JFFCU confirmed them as successors in interest at some point. According to Ho's own affidavit, JFFCU provided mortgage statements to her counsel in October 2022.

[3] Late in the discovery period, the Court ordered Ho to respond to JFFCU's contention interrogatories, including Interrogatories 9 and 10 asking Ho to set forth how JFFCU violated RESPA and TILA, respectively. ECF No. 90, at 5-6; ECF No. 82-1, at 3. Originally, Ho had answered merely "See Complaint." The Court required Ho to supplement her responses to provide any information beyond that alleged in the Complaint. ECF No. 90, at 6. In her supplemental responses, Ho refused to identify any further facts or legal basis for her claims, stating instead that she "retained Counsel to help investigate the facts and apply legal theory." ECF No. 92-1, at 2. JFFCU filed a new motion to compel, and the Court ruled that Ho's supplemental responses completely failed to answer JFFCU's interrogatories separately and fully as required by the Federal Rules of Civil Procedure. The Court ordered Ho to provide substantive responses. ECF No. 94. Her revised supplemental responses again failed to allege any facts or suggest any claims beyond those asserted in the Complaint, asserting instead that Ho did not know the answer to the question and that "there is no additional information beyond that alleged in the complaint." ECF No. 107-1, at 2. Ho has had more than adequate opportunity to make known her claims.

[4] JFFCU asserts in opposition that it is not obligated to provide loss mitigation measures because it is a large servicer. Ho denies this is true. The regulation regarding loss mitigation procedures that Ho cites in support notes "Nothing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option." 12 C.F.R. § 1024.41. The parties have not addressed this provision. All this reflects that Ho's belated attempt to assert the claim has precluded the parties from exploring the basis for the claim or any defenses JFFCU might have thereto. Moreover, the regulation that Ho cites in support of her claimed entitlement to information about loss mitigation concerns the borrower's right to seek damages where the loan servicer fails to properly respond to a borrower's written notice of an error by the servicer. See 12 C.F.R. § 1024.35; see also 12 U.S.C. § 2605(3)-(f). But Ho has not alleged or presented any evidence to support finding that she ever notified JFFCU of an error regarding provision of loss mitigation options.

buried so deeply in Ho's motion that JFFCU did not even address it. In any event, to the extent this claim was properly plead, Ho appears to rely on the servicer's duty to respond to a borrower's written inquiries. 12 U.S.C. § 2605(e). But she has presented no evidence to support finding that she made such an inquiry. Nor has any evidence been presented from which to conclude whether or not JFFCU complied with any such requests. JFFCU is entitled to summary judgment dismissing any RESPA claim concerning a failure to provide loan documents.

    c. *Plaintiffs' TILA claims*

Ho asserts three violations of TILA. First, she argues that JFFCU failed to open an escrow account as required by 15 U.S.C. § 1639d. She cites no case law, statute, or regulation establishing a private cause of action for such failure. Assuming one exists, as JFFCU points out, Ho never asserted any violation related to an escrow account in her original or Amended Complaint. No allegation could be interpreted as implicating any such cause of action. She cannot now assert a claim that JFFCU has never had prior notice of. In any event, she fails to cite any evidence concerning the purported lack of an escrow account or any damages she may have suffered as a result of same. JFFCU is entitled to summary judgment dismissing any TILA claim concerning the failure to open an escrow account.

Next, Ho argues that JFFCU failed to determine Do's ability to repay as required by 15 U.S.C. § 1639(h). "A creditor shall not engage in a pattern or practice of extending credit to consumers under mortgages referred to in section 1602(aa) of this title based on the consumers' collateral without regard to the consumers' repayment ability, including the consumers' current and expected income, current obligations, and employment." 15 U.S.C. § 1639(h). As an initial matter, although JFFCU does not raise the argument, it appears that this statutory requirement is not even applicable to the present loan. The referenced section of the Home Ownership and Equity

12

Protection Act (15 U.S.C. § 1602(aa) (designated as subsection (bb)(1) in the current version of the statute)) applies to high-cost mortgages that include a first mortgage on a consumer's principal dwelling with an annual percentage rate at consummation that exceeds the average prime offer rate by more than 6.5%, a credit transaction where total points and fees payable in connection with the transaction exceed 5% of the total transaction amount, or where the credit documents impose a prepayment fee or penalty. 15 U.S.C. § 1602(bb); see Qadeer v. Bank of Am., N.A., No. 12-14310, 2013 WL 424776, at *3–4 (E.D. Mich. Feb. 4, 2013). On the face of the Note, none of these situations are applicable here.

In any event, even if JFFCU was required to determine Do's repayment ability, the undisputed facts show that JFFCU met its burden. The credit documents show that Do's tax returns and income—from his shrimping business and from the rental of the commercial property—were considered. Notably, it is undisputed that Do actually did make scheduled payments on the Loan until the time of his death.

Ho argues that Do had no ability to repay. She argues that JFFCU knew or should have known that a substantial amount of the income Do claimed in 2015 and 2016 was residual BP Oil Spill settlement payments that were not expected to continue. These assertions do not create a fact issue. There is no evidence to a support finding that JFFCU failed to determine Do's repayment ability. JFFCU is entitled to summary judgment dismissing any TILA claim that it failed to determine Do's repayment ability.

Lastly, Ho argues that JFFCU violated TILA by failing to offer her rescission or any related disclosures. TILA requires that in the case of any consumer credit transaction in which a security interest is or will be retained on the obligor's principal dwelling:

> the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the

> information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later.

15 U.S.C. § 1635(a). But even if the disclosures are never delivered, this right of recission expires "three years after the date of consummation of the transaction or upon sale of the property, whichever occurs first." Id. § 1635(f). First, Ho has again failed to allege any such claim for a right to TILA rescission in her Complaint or Amended Complaint. Moreover, as JFFCU points out, more than three years had passed between the consummation of the Loan and Ho's assertion of a right to rescission of the transaction. In fact, the three year period expired in January 2021, well before Do passed away. As a result, the equitable tolling arguments Ho raises (e.g., concerning her discovery of the loan and her limited education and English-language skills) are inapplicable. JFFCU is entitled to summary judgment dismissing any TILA claim for recission or failure to make required disclosures.

   3. *Jurisdiction*

Having found that Ho's federal claims fail, the Court considers whether to exercise supplemental jurisdiction over Ho's remaining claims and JFFCU's counterclaims. Where the court has original jurisdiction over an action, it has supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C.A. § 1367(a). "A federal court may decline to exercise supplemental jurisdiction when it has dismissed the claims on which its original jurisdiction was based." Mitchell v. Crescent River Port Pilots Ass'n, 515 F. Supp. 2d 666, 681 (E.D. La. 2007). The Court has wide discretion to forego supplemental jurisdiction. Id.; see Guzzino v. Felterman, 191 F.3d 588, 594 (5th Cir. 1999). The

Court should "hesitate to exercise jurisdiction over state claims" in the absence of "considerations of judicial economy, convenience and fairness to the litigants." Guzzino, 191 F.3d at 594.

The Court finds it appropriate to decline jurisdiction over the parties' state law claims. Issues of annulment, community property rights, and enforcement of mortgages are better handled by Louisiana state courts where there is no federal hook. Furthermore, it would also be more efficient for the parties' claims to proceed in state court where a possible parallel foreclosure proceeding, if appropriate, could be pursued. Although this case has been pending for over a year and the parties are scheduled for trial in January, the Court's review of the evidence submitted in support of the parties' summary judgment motions indicates that the parties may not yet be ready for trial. Numerous allegations made by both sides are unsupported by any evidence at all.

Accordingly, the Court declines to exercise supplemental jurisdiction over the parties' state law claims and all such claims are dismissed without prejudice.

## Conclusion

Because of conflicting evidence, the Court makes no finding as to whether RESPA and TILA properly apply to the Loan at issue here. But, assuming that these statutes do apply, the Court finds that JFFCU is entitled to summary judgment because Ho has failed to present sufficient evidence that could reasonably result in the conclusion that JFFCU violated the statutes. Moreover, as to several of the asserted violations, Ho failed to timely plead them. Accordingly, JFFCU's Motion for Summary Judgment (Rec. Doc. 98) is GRANTED in part, Ho's Motion for Summary Judgment (Rec. Doc. 103) is DENIED in part, and Ho's claims under RESPA and TILA are dismissed with prejudice. Further, the Court finds it is not appropriate to exercise supplemental jurisdiction over the parties' remaining state law claims and these claims are dismissed without prejudice.

New Orleans, Louisiana, this 20th day of December, 2024.

                                                           _____
                                                               Janis van Meerveld
                                                          United States Magistrate Judge